UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH BURDICK,

                    Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

**DECISION AND ORDER**

6:18-CV-06881 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Deborah Burdick ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 14), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 9) is denied.

# BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on April 12, 2013. (Dkt. 8 at 61-62, 599).[1] In her applications, Plaintiff alleged disability beginning September 27, 2010, due to the following impairments: three bulging discs; disc deterioration; depression; anxiety; arthritis; glaucoma; asthma; and eczema. (*Id.* at 63, 78, 599). Plaintiff's applications were initially denied on July 11, 2013. (*Id.* at 97-102, 599). Following hearings before administrative law judge ("ALJ") Elizabeth W. Koennecke in December 2014 and May 2015, the ALJ issued an unfavorable decision on June 15, 2015. (*Id.* at 14-27, 37-60, 599). The Appeals Council denied Plaintiff's request for review (*id.* at 7-9, 599), and Plaintiff appealed the decision to the United States District Court (*id.* at 599).

On August 11, 2017, the parties entered into a stipulation, agreeing that Plaintiff's case should be remanded to the Commissioner for further administrative proceedings. (*Id.* at 599, 670-71). The Appeals Council issued an order on December 14, 2017, remanding the case to the ALJ and directing that the ALJ further consider opinions offered by Plaintiff's treating and non-treating sources. (*Id.* at 673-80). A second hearing was held on August 22, 2018. (*Id.* at 599, 632-45). Plaintiff appeared by video in Horseheads, New York, and the ALJ presided over the hearing from Syracuse, New York. (*Id.* at 599-600).

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

On September 21, 2018, the ALJ issued an unfavorable decision. (*Id.* at 596-624). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.      Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*.

§§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015.  (Dkt. 8 at 602).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 27, 2010, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "obesity and lumbar spine disorder with facet arthropathy, degenerative disc disease, and sacroiliitis."  (*Id.*).  The ALJ further found that the following medically determinable impairments were non-severe: respiratory disorders (including asthma, bronchial asthma, and/or seasonal allergies); digestive disorders (including GERD, acid reflux, heartburn, constipation, hemorrhoids, and/or side effects of medications); glaucoma and other vision problems; overactive bladder with stress urinary incontinence; gynecological issues;

chronic disorders of her cervical and thoracic spine and both knees; headaches/migraines; eczema, rash, tinea, candidiasis of skin and nails, and other related skin conditions; and mental disorders (including depression, neurotic depression, reactive depression, affective disorder, adjustment disorder, dysthymic disorder, and anxiety disorder).  (*Id.* at 603-07).  With respect to the conditions of obstructive sleep apnea, dizziness, vitamin D deficiency, renal cyst, dental problems, thyroidmegaly, tachycardia, easy bruising, hematemesis, and history of blood transfusion, the ALJ concluded that these were not medically determinable impairments.  (*Id.* at 607).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 29).  The ALJ particularly considered the criteria of Listings 1.02, 1.04, 11.00, 14.00, and 14.09, in reaching her conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p.  (*Id.* at 607-08).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> can occasionally lift, carry, push, or pull 10 pounds; can frequently lift, carry, push, or pull less than 10 pounds; can occasionally squat, kneel, crawl, climb stairs, or twist; and requires a job that can be performed in a seated or standing position, but can remain on task.

(*Id.* at 608).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 620).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there

were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cashier II, information clerk, and order clerk, food and beverage. (*Id.* at 620-23). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 623-24).

## II.     The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner. (Dkt. 9 at 25). Plaintiff raises seven arguments in support of his motion, including: (1) the ALJ substituted her own judgment for that of competent medical opinion; (2) the ALJ improperly assessed Plaintiff's ability to maintain an acceptable work pace and/or level of attendance; (3) the ALJ improperly assessed the opinions of Look Persaud, M.D., the consultative examiner; (4) the ALJ made incorrect factual determinations, "cherry picked" evidence, ignored the episodic nature of Plaintiff's impairments, and searched the record for grounds to deny benefits; (5) the ALJ failed to consult with a medical expert in assessing Plaintiff's RFC; (6) the ALJ improperly weighed the medical opinions of Michael B. Lax, M.D. and Jacque Millar, N.P.; and (7) the ALJ's step five determination is not supported by substantial evidence. (*Id.* at 2). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A.  Assessment of Plaintiff's RFC

Plaintiff's first and fifth arguments challenge the ALJ's assessment of the RFC as not supported by medical opinion evidence. (*See* Dkt. 9 at 12-15 (contending that the ALJ declined to adopt the limitations assessed by the workers' compensation board, NP Millar,

Dr. Lax, Jennifer Hubbell, N.P., and Vidyasagar Mokureddy, M.D., and substituted her own judgment in assessing the RFC); *id*. at 24 ("the ALJ does not cite a single medical opinion that supports her RFC.")). As explained below, Plaintiff's arguments are without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 U.S. Dist. LEXIS 20030, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

The ALJ assessed an RFC limiting Plaintiff to light work with additional limitations, including that Plaintiff can occasionally lift, carry, push or pull 10 pounds; frequently lift, carry, push or pull less than 10 pounds; occasionally squat, kneel, crawl, climb stairs, or

twist; and requires a job that can be performed in a seated or standing position, but can remain on task. (Dkt. 8 at 608). As the ALJ explained in the written determination, these limitations are supported by specific medical opinion evidence in the record, including the opinion offered by Dr. Persaud:

> the exertional limitations identified by Dr. Persaud for moderate to marked restrictions in the ability to lift, carry, push, or pull are reflected in the residual functional capacity for lifting, carrying, pushing, or pulling no greater than ten pounds on an occasional basis, with "occasional" defined as occurring from very little up to one-third of the time, as well as lifting, carrying, pushing, or pulling less than ten pounds on a frequent basis, with "frequent" defined as occurring from one-third to two-thirds of the time. Similarly, mild or moderate restrictions in squatting, kneeling, crawling, climbing stairs, or twisting noted by Dr. Persaud are reflected in the residual functional capacity for performing these activities on no more than an occasional basis.

(*Id*. at 613). The ALJ's assessment of Plaintiff's ability to perform light work, with additional limitations for performing certain activities on an occasional or frequent basis, is consistent with Dr. Persaud's opinion. *See Carl D. v. Commissioner*, No. 5:17-cv-01114(TWD), 2019 WL 1115704, at *11 (N.D.N.Y. Mar. 11, 2019) ("moderate limitations in lifting, bending, and reaching does not necessarily preclude the performance of light work."); *Moxham v. Commissioner*, No. 3:16-CV-1170(DJS), 2018 WL 1175210, at *8 (N.D.N.Y. Mar. 5, 2018) (marked limitations for squatting, lifting, and carrying, and mild limitations for walking, standing, sitting, and bending are consistent with the ability to perform light work); *Renee v. Berryhill*, No. 1:15-cv-00400(MAT), 2017 WL 6618737, at *3 (W.D.N.Y. Dec. 27, 2017) ("a 'moderate' limitation in climbing, pushing, and pulling is adequately accounted for in a finding that plaintiff can perform those activities only occasionally."). The ALJ further explained that "[t]he need for a job that can be performed

in a seated or standing position not identified by Dr. Persaud is supported in part by the objective medical evidence and the claimant's ongoing treatment for a combination of physical impairments, including obesity." (Dkt. 8 at 613). The ALJ discussed each of the limitations included in the RFC, and identified specific medical evidence supporting each limitation. Accordingly, Plaintiff's argument that the RFC is not supported by medical opinion evidence lacks support in the record.

To the extent Plaintiff believes that the RFC is not supported by substantial evidence because the ALJ did not adopt all the limitations assessed by various medical professionals in the record, (*see* Dkt. 9 at 13-14) she is mistaken. The ALJ must assess an RFC that is consistent with the record as a whole, but it does not have to correspond with one particular medical opinion. *Matta*, 508 F. App'x at 56. Here, the ALJ explained, in detail, her reasons for affording the opinions offered by NP Millar, Dr. Lax, Jennifer Hubbell, N.P., and Vidyasagar Mokureddy, M.D. only partial weight. (*See* Dkt. 8 at 615-16 (affording partial weight to these providers because "they had the benefit of examining the claimant during the period at issue," but "are not entitled to greater weight because they are not well-supported given the scant chronically positive objective clinical and laboratory findings outlined above and are inconsistent with other substantial evidence.")). Because their opinions were not supported by other evidence in the record, the ALJ was not required to adopt all the limitations assessed by these medical providers.

Plaintiff further contends that the ALJ erred by not finding Plaintiff "100% disabled," as she was found by Workers' Compensation. (Dkt. 9 at 13-14). The ALJ gave no weight to this determination, correctly explaining that "decisions rendered by the State

of New York Workers' Compensation Board are not binding on the Commissioner in determining the claims for Social Security benefits. Furthermore, the finding that the claimant is 'disabled' or unable to work is an issue reserved to the Commissioner in determining the claims for Social Security benefits." (Dkt. 8 at 614); *see also LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (determination of whether a claimant is "disabled" under the statute is a decision reserved to the Commissioner); *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.").

Plaintiff also argues that the ALJ failed to develop the record by consulting with a medical expert regarding the nature and severity of Plaintiff's functional limitations. (Dkt. 9 at 23-34). Plaintiff refers to the December 2017 order of the Appeals Council, which directed the ALJ to further consider the opinions offered by Dr. Persaud and NP Millar, and "[i]f necessary," to obtain evidence from a medical expert relating to the functional limitations resulting from Plaintiff's impairments. (*See* Dkt. 8 at 678). As explained above, the written determination contains a lengthy discussion of the evidence offered by Dr. Persaud and NP Millar. This discussion includes an explanation of the ALJ's decision to adopt limitations assessed by Dr. Persaud for Plaintiff's ability to lift, carry, push, pull,

bend, squat, kneel, and crawl, in compliance with the Appeals Council's order. (*See id.* at 676-77).

The ALJ explained that she took steps to collect additional medical opinion evidence. For example, prior to the August 2018 hearing, the ALJ asked Plaintiff's attorney "to submit all other evidence that would support the claim, including updated medical evidence, other evidence from all sources, and any available assessments of residual functional capacity," as well as to "contact all practitioner(s) who provided a medical source statement and obtain clarification, including on the issues of off-task behavior and absenteeism." (*Id*. at 599). Plaintiff's attorney requested a supplemental hearing, but Plaintiff's medical sources did not provide clarification of their opinions on off-task behavior and excessive absences. (*Id*.). Further, Plaintiff's attorney represented that the record was complete at the August 2018 hearing. (*Id*. at 600). The ALJ further explained that she elected not to call an additional medical expert as that decision was at her discretion, and she found that the record was "complete and [did] not warrant the use of additional medical expert opinion and additional consultative examination given the objective medical evidence and claimant's engagement in a range of activities that require significant physical demands." (*Id*. at 619). Here, the record contains several medical opinions from both treating and non-treating sources. As explained above, the RFC is directly supported by opinion evidence already in the record, including the opinion offered by Dr. Persaud. Accordingly, it was proper for the ALJ to exercise her discretion and determine that it was not necessary to obtain additional opinion evidence. *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the

record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'") (quoting *Perez*, 77 F.3d at 48) (alteration in original). The Court has reviewed the written determination, the assessed RFC, and the medical evidence, including the opinion offered by Dr. Persaud, and finds that the RFC is well-supported by the medical record. Remand is not required on this basis.

### B. Plaintiff's Ability to Maintain Work Pace and/or Attendance

Plaintiff next argues that the ALJ improperly rejected opinion evidence that Plaintiff is unable to maintain acceptable levels of work pace and/or attendance. Plaintiff contends that it was improper for the ALJ to reject this evidence as pre-dating Plaintiff's disability application, and as contradicted by her prior work, daily activities, and negative clinical findings. (Dkt. 9 at 15-16). Defendant responds that the ALJ considered Plaintiff's ability to meet pace and attendance demands, but the evidence of record did not demonstrate that Plaintiff would need extra breaks or would be off-task. (Dkt. 14-1 at 20-21).

The written determination contains a discussion of reports offered in April 2014 and July 2015 by Dr. Lax and NP Millar that Plaintiff would be off-task more than 33 percent of the workday and have more than four absences from work per month. (Dkt. 8 at 615). The ALJ also discussed reports by Dr. Mokureddy, NP Hubbell, and Jill Reidy, N.P., in June 2015 or June 2018, which included significant off-task behavior and excessive absences. (*Id.*). Following the discussion of this evidence, the ALJ explained that the record did not support frequent, unscheduled breaks, excessive absenteeism, or tardiness. (*Id.* at 618). Specifically, the ALJ noted that Plaintiff's "prior problems with attending work do not represent the maximum residual functional capacity as they predate the period

at issue," or "the work involved greater physical demands than are contemplated in this case." (*Id.*). Further, the ALJ explained that "[t]he claimant's allegations of off-task behavior due to pain and side-effects of medications are not supported by the various exams that show that claimant appears awake/alert and in no acute distress[.]" (*Id.*). Regarding Plaintiff's need to take unscheduled breaks, the ALJ explained that "[t]he need for resting/reclining for up to four hours per day and difficulty getting out of bed five days per month are not supported by the lack of muscle atrophy affecting the claimant's upper and lower extremities." (*Id.*). Finally, regarding Plaintiff's ability to maintain regular work attendance, the ALJ noted that "[a]lthough there are periodic gaps in treatment or cancelled medical appointments, the claimant was able to attend other scheduled appointments without difficulty . . . that fail to support frequent absences from work." (*Id.*). The ALJ concluded that "[t]he need to periodically change positions outside of the residual functional capacity could be accommodated by regular breaks during a typical 8-hour workday, 40-hour work week, or equivalent schedule." (*Id.*). In other words, the ALJ found that other evidence in the record – both reports by Plaintiff, and objective medical evidence – did not support the assessed limitations for time off-task and absenteeism.

The Court has reviewed the opinions regarding Plaintiff's ability to stay on task and maintain regular attendance. (*See* Dkt. 8 at 507-08, 590-91, 594-95, 964-65). Based on the lengthy explanation contained in the written determination, it is clear that the ALJ adequately considered Plaintiff's ability to maintain work pace and attendance. The ALJ also pointed to specific evidence in the record supporting her conclusion that Plaintiff does not require additional accommodation in those areas, beyond her need for a job that can be

performed in a seated or standing position. (*See* Dkt. 8 at 610 (despite her report that she uses a motorized cart when she grocery shops, Plaintiff does not use a cane, walker, wheelchair, or other assistive device for support when ambulating on a regular and continuing basis); *id.* at 611 (Plaintiff's reports of difficulty sleeping and daytime fatigue that may lead to frequent absences from work or significant off-task behavior appear overstated, for reasons including: the notations made by Plaintiff's own medical sources of drowsiness and fatigue as side effects of medications are not seen in other records; Plaintiff at times denied side effects of medications and difficulty sleeping; beyond nighttime doses of a normal medication regimen, there are no specific attempts by medical sources to evaluate or treat Plaintiff's alleged chronic fatigue; and Plaintiff's complaints of chronic sleep problems are not supported by notations in the medical record that she appeared awake and/or alert); *id.* at 490-91 (report of June 2013 consultative examination by Sara Long, Ph.D., noting that Plaintiff was well-oriented and had good attention and concentration, and opining that Plaintiff is "able to maintain attention and concentration and is able to maintain a regular schedule."); *id.* at 616 (noting that "specific requests for clarifications of the off-task behavior and excessive absences [opined by Plaintiff's medical providers] were returned by the claimant's medical sources restating the prior limitations without any further analysis or explanation. Instead, the limitations provided by the claimant's own medical sources appear to be based primarily on the claimant's subjective

self-reports of symptoms and functional limitations that are inconsistent with the evidence[.]")).

The ALJ adequately explained her reasoning for not incorporating any additional limitations in the RFC, and her conclusions are well-supported by the record. Accordingly, the ALJ did not err in assessing Plaintiff's ability to maintain acceptable levels of work pace and attendance. *See Christina M. v. Saul*, No. 3:18-CV-0332 (CFH), 2019 WL 3321891, at *6 (N.D.N.Y. July 24, 2019) ("although Plaintiff maintains that undisputed medical opinion established that she has moderate or greater limitations in work pace and/or attendance, interacting with the general public, accepting instructions, and responding appropriately to criticism from supervisors, the Court's review of the ALJ's decision and of the record does not support these arguments. The ALJ's decision indicates that she fully reviewed and discussed the evidence before him in reaching Plaintiff's RFC, implicitly indicating greater limitations in these areas were not warranted by that evidence."); *Bembridge v. Commissioner*, No. 3:15-CV-745 (DNH/ATB), 2016 WL 3777739, at *9 (N.D.N.Y. May 16, 2016) (ALJ did not err in rejecting opinion evidence regarding the plaintiff's ability to maintain concentration, work pace, and attendance, as the ALJ found the opinions to be speculative and not supported by the record), *adopted*, 2016 WL 3822763 (N.D.N.Y. July 12, 2016). The Court has reviewed the written determination, as well as the evidence discussed by the ALJ, and finds that her conclusions

regarding Plaintiff's ability to maintain work pace and attendance are supported by substantial evidence. Remand is not required on this basis.

### C. **Evaluation of Dr. Persaud's Opinion**

Plaintiff next argues that the ALJ improperly assessed opinion evidence offered by Dr. Persaud. (Dkt. 9 at 17). Specifically, Plaintiff contends that Dr. Persaud's opinion does not support the assessed RFC and is vague. (*See id*. at 18 ("The question here is – what forms the ALJ's conclusion that Dr. Persaud's opinion equates with the ability to frequently lift, carry, push and pull less than ten pounds, and occasionally lift, carry, push and pull up to ten pounds? Dr. Persaud never said any such thing. Rather, he used the vague terms 'moderate to marked,' which . . . without more, are insufficient [t]o support an ALJ's RFC determination.")).

As explained at Section II(A) of this Decision and Order, the RFC is directly supported by opinion evidence offered by Dr. Persaud. Further, the opinions offered by Dr. Persaud are not vague because they were based on an in-person consultative examination (*see* Dkt. 8 at 484-88) and are well-supported by the record. With regard to her reliance on Dr. Persaud's opinion, the ALJ explained:

> Although Dr. Persaud did not specifically define the terms "moderate" and "moderate to marked," there is nothing particularly vague about this medical opinion that would require clarification given the few chronically positive objective clinical findings noted on physical exams conducted by Dr. Persaud

that are generally consistent with similar exams noted by various other medical sources.

(*Id*. at 619). The Court has reviewed Dr. Persaud's opinion. On June 19, 2013, Dr. Persaud offered the following medical source statement:

> Based on today's evaluation, there are no restrictions to sitting, standing, and walking on even surfaces. Mild restriction to walking on uneven terrain, up inclines, ramps, and stairs. Moderate restriction from squatting, kneeling, and crawling. Moderate restriction for bending, mild for twisting and turning. No restriction for reaching overhead and in all other planes. No restriction for fine motor activity of hands. She has moderate to marked restriction for lifting, carrying, pushing, and pulling due to her back and right knee. No restriction to speaking, seeing, and hearing. She is able to travel via public transportation.

(*Id*. at 487-88). The Court finds that Dr. Persaud's use of the terms "mild," "moderate," and "marked," are not vague under the circumstances. Dr. Persaud conducted a thorough, in-person physical examination of Plaintiff. His report includes a summary of his examination findings, as well as a recitation of Plaintiff's medical history, medications, and activities of daily living. Accordingly, Dr. Persaud's use of the terms "mild," "moderate," and "marked," do not render his opinion vague. *See Taylor v. Commissioner*, No. 17-CV-1011-MJR, 2019 WL 457718, at *4 (W.D.N.Y. Feb. 6, 2019) (while the doctor's use of the term "'moderate' could constitute vagueness," explaining that the "opinion of 'moderate' limitations does not stand alone. It is based on the objective MRI results and the in-person physical examination of the Plaintiff."); *Caci v. Colvin*, No. 5:14-CV-01407, 2015 WL 9997202, at *10 (N.D.N.Y. Dec. 22, 2015) (ALJ's reliance on opinion that the plaintiff had "moderate to severe" limitations for standing, walking, and climbing was proper, because the doctor's opinions were supported by her thorough examination of the plaintiff), *adopted*, 2016 WL 427098 (N.D.N.Y. Feb. 3, 2016).

Accordingly, the ALJ's reliance on Dr. Persaud's opinion was proper. Remand is not required on this basis.

### D. **Evaluation of Evidence**

Plaintiff next makes the general argument that the ALJ made numerous incorrect factual determinations, cherry picked evidence, ignored the episodic nature of Plaintiff's impairments, and searched the record for grounds to deny benefits. (Dkt. 9 at 20). Plaintiff disagrees with the following findings by the ALJ: Plaintiff had an overall positive response to conservative treatment; her symptoms were controlled with medications; Plaintiff was not recommended for surgical intervention; she changed her address from Elmira, New York, to Pine City, New York; "not all" of Plaintiff's examinations showed positive clinical findings; and Plaintiff's ability to perform some physical and daily activities is consistent with the ability to do light work. (*Id*. at 20-23). Plaintiff states that the ALJ ignored evidence in the record contradicting these findings. (*Id*. at 20).

"The ALJ is not required to specifically discuss each piece of evidence considered." *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 208 (N.D.N.Y. 2012); *see also Barringer v. Commissioner*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) (an ALJ is not required to "mention or discuss every single piece of evidence in the record," and although the ALJ is "required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.") (internal quotations and citations omitted) (alteration in original). Rather, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56. The Court has

reviewed the transcript and concludes that the ALJ did not misrepresent factual information. Rather, the ALJ's thorough, 26-page written determination shows that she carefully considered all the evidence in the record, including evidence weighing in Plaintiff's favor. (*See, e.g.*, Dkt. 8 at 609 (discussing Plaintiff's testimony that she is totally disabled, has severe pain in her back that radiates to her extremities, has difficulty performing various physical tasks, and needs to take frequent breaks); *id*. at 611 (discussing Plaintiff's report of chronic sleep problems); *id*. at 613-14 (acknowledging that Plaintiff had some positive laboratory findings, including decreased strength and weakness and some positive straight leg raise tests)). The ALJ did not misrepresent or ignore this evidence; rather, she explained that she found some of this evidence to be unsupported or accounted for by the RFC. Accordingly, Plaintiff's contention that the ALJ "cherry picked" evidence is not supported by the record. *See Barringer*, 358 F. Supp. 2d at 79 ("the ALJ's decision . . . contains ample reference to all the medical sources. Thus, a conclusion that the ALJ did not consider all the evidence or that he selectively excluded objective findings is unwarranted.").

Plaintiff argues that the ALJ erred by considering Plaintiff's ability to perform certain physical and daily activities, because Plaintiff's ability to perform daily activities does not equate to her ability to perform light work. (Dkt. 9 at 22-23). Plaintiff's argument is misplaced. "The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Commissioner*, No. 5:12-cv-1795 (MAD/CFH), 2014 WL

1451996, at *8 (N.D.N.Y. Apr. 14, 2014). Here, the ALJ considered Plaintiff's ability to perform certain activities in assessing the credibility of her testimony regarding her physical and mental limitations. (*See, e.g.*, Dkt. 8 at 609-17 (explaining that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and discussing Plaintiff's physical activities and activities of daily living, which contradicted her claim that she was unable to work)). This was proper. *See Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("it is entirely appropriate for an ALJ to consider a claimant's daily activities in assessing her credibility and capacity to perform work-related activities."); *Lesanti v. Commissioner*, No. 1:19-CV-00121 EAW, 2020 WL 500986, at *8 (W.D.N.Y. Jan. 30, 2020) ("SSR 16-3p expressly permits an ALJ to consider Plaintiff's daily activities, among other factors, in assessing the credibility of Plaintiff's subjective complaints."); *Killings v. Commissioner*, No. 15 Civ. 8092 (AT) (JCF), 2016 WL 4989943, at *14 (S.D.N.Y. Sept. 16, 2016) (the ALJ properly considered that the plaintiff took her six-year-old child to school, drove, did some chores, and socialized with friends in assessing the plaintiff's credibility). Remand is not required on this basis.

### E.  Weighing of Dr. Lax's Opinion

Plaintiff also argues that the ALJ improperly weighed the opinion of Dr. Lax, Plaintiff's treating physician. (Dkt. 9 at 24-25). Plaintiff does not identify which portions of Dr. Lax's opinion she believes are entitled to more weight, but argues that the opinions offered by Dr. Lax and NP Millar are entitled to more than "partial" or "no weight" because

they performed numerous examinations, they had an ongoing treatment relationship with Plaintiff, their opinions are supported by clinical findings, and their opinions are consistent with those of other treating providers. (*Id*. at 24).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is

the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33.

The ALJ explained her weighing of opinion evidence offered by Dr. Lax and NP Millar:

> Partial weight is accorded to the medical opinions/assessments of the claimant's occupational medicine specialist, Michael B. Lax, M.D. . . . and Jacque Millar, N.P., because they had the benefit of examining the claimant during the period at issue before the undersigned. In reports from April 2014 and July 2015, Dr. Lax and/or Mr. Millar identified greater exertional and non-exertional limitations than are adopted in this case, including sitting for no more than four hours in an eight-hour workday; standing or walking no more than two hours in an eight-hour workday; inability to lift greater than five pounds occasionally; off-task behavior greater than 33% of the workday; and more than four absences from work per month (Exhibits B17F and B27F). In November 2014, Dr. Lax and Mr. Millar indicated that the claimant's condition worsened with more severe limitations (Exhibit B22F, p. 2). At other times, Mr. Millar recommended that the claimant can engage in activity only as tolerated and should avoid aggravating activities (*See, e.g.*, Exhibits B16F, p. 1; and B20F, p. 8).

(Dkt. 8 at 615). The ALJ concluded that these assessments were entitled to only "partial weight," as "they are not well-supported given the scant chronically positive objective clinical and laboratory findings outlined above and are inconsistent with other substantial

evidence." (*Id.*). The ALJ then cited to specific evidence in the record contradicting Dr. Lax's and NP Millar's assessments, including that the findings of their examinations of Plaintiff were inconsistent, and the assessed limitations appeared be based on Plaintiff's subjective self-reports. (*Id.* at 615-16); *see also id.* at 405-09, 410-13, 415-17, 418-21 (documenting mostly normal physical examinations of Plaintiff, but opining that Plaintiff is "100%" impaired). As explained by the ALJ, Plaintiff's reports regarding the severity of her impairments appear to be supported by little more than her own subjective reports. *See Mauro v. Commissioner*, 746 F. App'x 83, 84 (2d Cir. 2019) ("subjective complaints alone are not a basis for an award of disability insurance benefits in the absence of corroborating objective medical evidence.").

It is clear from the written determination that the ALJ considered the time period over which Plaintiff received treatment from Dr. Lax and NP Millar, as well as Dr. Lax's specialty, as required by the treating physician rule. Further, the ALJ's reasons for affording less weight to these opinions are proper considerations for evaluating a medical opinion, including the opinion of a treating physician. *See Fazio v. Commissioner*, 408 F. Supp. 3d 240, 246 (E.D.N.Y. 2019) ("[T]he ALJ may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence. A treating physician's opinion may also be rejected if it is internally inconsistent or otherwise uninformative.") (citations omitted) (alteration in original). Accordingly, the ALJ complied with the treating physician rule in evaluating the evidence offered by Dr. Lax and

NP Millar, and her conclusions are well-supported by the record. Remand is not required on this basis.

## F. **The Step Five Determination**

Plaintiff's seventh and final argument is that the ALJ's step five determination is not supported by substantial evidence, because she relied on the opinion of the vocational expert. (Dkt. 9 at 25). Specifically, Plaintiff argues that "[t]he hypothetical given to the [vocational expert] mirrored the ALJ's RFC," and "[f]or the reasons set forth above, the RFC does not properly account for Plaintiff's limitations." (*Id*.). In response, Defendant contends that because Plaintiff has failed to show any genuine defect in the RFC finding, her argument regarding the hypothetical question should fail. (Dkt. 14-1 at 23).

At step five of the sequential analysis, the ALJ relied on the testimony of the vocational expert to determinate that, based on her RFC, Plaintiff could perform the representative occupations of cashier II, information clerk, and order clerk. (Dkt. 8 at 621). Plaintiff concedes that Plaintiff's assessed RFC, and the hypothetical given to the ALJ, are the same. (*See* Dkt. 9 at 25; *see also* Dkt. 8 at 640-64). As explained above, the assessed RFC is adequately explained and well-supported by the medical record. Accordingly, the ALJ's step five determination is supported by substantial evidence. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and accurately reflect

the limitations and capabilities of the claimant involved.") (internal quotations and citations omitted) (alteration in original). Remand is not required on this basis.

## CONCLUSION

In sum, the ALJ's 26-page written determination is well-supported by the record. The ALJ discussed the evidence supporting the assessed RFC, and her reasons for adopting or rejecting certain opinion evidence, such that the Court may meaningfully review the decision. For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 25, 2020
Rochester, New York